UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID BARBEE, | ) |
| Petitioner, | ) |
| v. | ) No. 1:18-cv-02060-JMS-DLP |
| WARDEN -- ISP, | ) |
| Respondent. | ) |

**Order Denying Petition for a Writ of Habeas Corpus**

In his petition for a writ of habeas corpus, David Barbee challenges his 2008 Marion County convictions for murder and carrying a handgun without a license. For the reasons explained in this Order, Mr. Barbee's petition for a writ of habeas corpus is **denied**, and the action is dismissed with prejudice. In addition, the Court finds that a certificate of appealability should not issue.

## I. Background

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). The Indiana Court of Appeals summarized Mr. Barbee's offense as follows:

> On June 15, 2007, David Barbee shot and killed David Kimbrough while Kimbrough sat on Letroy Burks' porch. On the porch at the time of the shooting were Burks, Kimbrough's girlfriend Brandi Arnwine, Kimbrough's sister and Burks' girlfriend Lakeisha Kimbrough, Burks' cousin Brandon Tyler, and Anniya Willis and her young daughter.
>
> Barbee lived nearby, and he had driven past Burks' porch three times while Kimbrough and his companions were present. Sometime later, Barbee approached Burks' porch, used vulgarity, and stated "what did I tell you about coming out south," (Tr. at 110), and "you think I'm playing?" (*Id.* at 112.) Barbee's comments

1

appeared to be directed at Tyler. Barbee then pulled out a gun and fired a shot, which killed Kimbrough.

Anthony Hampton, who was walking next to Burks' house at the time of the shooting, testified he saw a man on the porch raise the gun and point it at Barbee, who was standing in the street. The gun appeared to misfire, and then Barbee raised and fired his gun. Barbee walked up the porch ramp and pointed the gun at Arnwine and Burks. Burks told Barbee "Man, you tripping, man. You shot my dude for nothing." (*Id.* at 164.) Barbee looked at Kimbrough lying in the grass, looked back at Burks, and then walked away.

Barbee was charged with and convicted of murder and Class C felony carrying a handgun without a license. Barbee filed a Motion to Correct Error and Set Aside Judgment, which was denied. Barbee filed his second Motion to Correct Error, arguing *inter alia* he was entitled to a new trial because Arnwine had recanted her earlier testimony that she did not see Tyler with a gun. That motion was also denied.

*Barbee v. State*, 2013 WL 5298468, *1 (Ind. Ct. App. Sept. 18, 2013) ("*Barbee I*").

On appeal, Mr. Barbee raised three issues, which the Indiana Court of Appeals restated as:

1. Whether the trial court should have granted Barbee's second Motion to Correct Error based on newly discovered evidence in the form of a recantation of testimony from one of the State's witnesses;

2. Whether comments in closing argument were fundamental error when the prosecutor implied that a witness testified as she did because she was afraid of Barbee; and

3. Whether the trial court committed fundamental error by instructing the jury on voluntary manslaughter.

*Id.* The court affirmed. *Id.* at *6. Mr. Barbee filed a petition to the Indiana Supreme Court, raising the second issue. Dkt. 9-7. The Indiana Supreme Court denied transfer. Dkt. 9-2 at 6.

Following his direct appeal, Mr. Barbee filed a petition for post-conviction relief in state court raising ineffective assistance of trial and appellate counsel. *Barbee v. State*, 2018 WL 1514473 (Ind. Ct. Mar. 28, 2018) ("*Barbee II*"). The trial court denied Mr. Barbee's petition following a hearing, and the Indiana Court of Appeals affirmed. *Id.* at *9. The Indiana Supreme Court denied Mr. Barbee's petition to transfer. Dkt. 9-15.

Mr. Barbee next filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 with this Court raising several issues.

## II. Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") directs how the Court must consider petitions for habeas relief under § 2254. "In considering habeas corpus petitions challenging state court convictions, [the Court's] review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (citation and quotation marks omitted). "The standards in 28 U.S.C. § 2254(d) were designed to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law." *Id.* (citation and quotation marks omitted).

A federal habeas court cannot grant relief unless the state court's adjudication of a federal claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey*, 877 F.3d at 302. "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts

3

rejected a state prisoner's federal claims, and to give appropriate deference to that decision[.]" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (citation and quotation marks omitted). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Id.* "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* "The issue is not whether federal judges agree with the state court decision or even whether the state court decision was correct. The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302. "Put another way, [the Court] ask[s] whether the state court decision 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103).

### III. Discussion

Mr. Barbee raises six issues. The Court addresses each claim in turn.

A. **Claims Barred by Procedural Default**

**Ground One: Trial Court's Decision on Newly Discovered Evidence**

Mr. Barbee's first claim is that the trial court erred by not granting his second motion to correct error based on newly discovered evidence. One of the witnesses testified at trial that no one else on the porch had a gun. After the trial, she contacted Mr. Barbee's attorney and advised him that her boyfriend—Mr. Barbee's intended target—had a gun and displayed it. Mr. Barbee

4

filed a motion to correct error, which the trial court denied. Mr. Barbee argues that the trial court and Indiana Court of Appeals misapplied Indiana law because he met the nine criteria for granting a new trial based on newly discovered evidence as explained in *Allen v. State*, 716 N.E.2d 449 (Ind. 1999). Dkt. 3 at 2. The Indiana Court of Appeals had ruled on direct appeal that the trial court did not abuse its discretion in denying the motion to correct error. *Barbee I*, 2013 WL 5298468, at *6.

This claim fails because it challenges the Indiana Court of Appeals' application of state law. A writ of habeas corpus may only issue if a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Therefore, "[e]rrors of state law in and of themselves are not cognizable on habeas review." *Arnold v. Dittman*, 901 F.3d 830, 835 n.3 (7th Cir. 2018); *accord Samuel v. Frank*, 525 F.3d 566, 574 (7th Cir. 2008). Mr. Barbee asserts no constitutional violation, and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Mr. Barbee contends that his newly discovered evidence claim inherently invokes a due process challenge. Dkt. 20 at 5. This argument provides him no relief. "To protect the primary role of state courts in remedying alleged constitutional errors in state criminal proceedings, federal courts will not review a habeas petition unless the prisoner has fairly presented his claims throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Johnson v. Foster*, 786 F.3d 501, 504 (7th Cir. 2015) (citation and quotation marks omitted); *see* 28 U.S.C. § 2254(b)(1)(A). "Fair presentment requires . . . the petitioner [to] raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory," such as the Indiana

Supreme Court. *King v. Pfister*, 834 F.3d 808, 815 (7th Cir. 2016) (citation and quotation marks omitted). "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id.* (citation and quotation marks omitted). Mr. Barbee made no arguments under federal law to the Indiana courts regarding this claim. Further, Mr. Barbee did not raise the newly discovered evidence claim in his petition to transfer to the Indiana Supreme Court. Dkt. 9-7. Thus, to the extent that Mr. Barbee now tries to present this claim as a violation of his right to due process, he has procedurally defaulted the claim by failing to exhaust it.

**Ground Two: Prosecutorial Misconduct**

Mr. Barbee's second ground alleges that comments by the prosecutor during closing argument satisfied Indiana's fundamental error standard. During closing, the prosecutor argued that one of the witnesses was hesitant to testify because she was afraid of Mr. Barbee, despite there being no evidence of Mr. Barbee threatening that witness. On direct appeal, Mr. Barbee argued that these comments amounted to prosecutorial misconduct, denying Mr. Barbee a fair trial. Dkt. 9-3 at 13-17. Because Mr. Barbee did not object to the prosecutor's statement, the Indiana Court of Appeals found the claim waived and reviewed it only under Indiana's version of the plain-error doctrine—that is, for fundamental error. *Barbee I*, 2013 WL 5298468 at *3. The court held that, although the prosecutor's comments were indeed improper, Mr. Barbee had not shown fundamental error due to the ample evidence of his guilt. *Id.* at *5.

Mr. Barbee frames his argument as a misapplication of Indiana's fundamental error standard—a state law claim not cognizable here, *Estelle*, 502 U.S. at 67-68. Although the Court construes this claim as a due process challenge, *see Ward v. Jenkins*, 613 F.3d 692, 697 (7th Cir. 2010) (liberally construing pro se habeas petitions), it is nevertheless procedurally defaulted. One

type of procedural default occurs when "the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Walker v. Martin*, 562 U.S. 307, 315 (2011) (citation and internal quotation marks omitted). "[W]hen a state court refuses to reach the merits of a petitioner's federal claims because they were not raised in accord with the state's procedural rules (i.e., because the petitioner failed to contemporaneously object), that decision rests on independent and adequate state procedural grounds." *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010).

The Indiana Court of Appeals' analysis of Mr. Barbee's claims under Indiana's fundamental error doctrine constitutes an independent and adequate state law basis for its decision. *Willis v. Aiken*, 8 F.3d 556, 567 (7th Cir. 1993) ("[T]he determination of the Indiana appellate court, that no fundamental error resulted from the instruction, rests on an independent and adequate state ground. We therefore hold that habeas review in the federal courts is . . . precluded."). This claim is therefore procedurally defaulted, and Mr. Barbee is not entitled to federal habeas relief on this ground. *See Walker*, 562 U.S. at 315.

**Ground Three: Jury Instruction**

Mr. Barbee's third ground alleges that the trial court provided an erroneous jury instruction on voluntary manslaughter which denied the jury the opportunity to distinguish between murder and voluntary manslaughter. The details of the flawed instruction, final jury instruction 23 (Jury Instruction 23), will be discussed below with Mr. Barbee's ineffective assistance of counsel claims. As a freestanding claim, it is denied as being procedurally defaulted. Mr. Barbee did not challenge the instruction in his direct appeal. On the contrary, he argued that the trial court erred by instructing the jury on voluntary manslaughter at all because the evidence did not support it. *Barbee I*, 2013 WL 5298468, at *5-6. Because Mr. Barbee did not challenge Jury Instruction 23

as a violation of his right to due process, he has procedurally defaulted the claim by failing to exhaust it in state court. *King,* 834 F.3d at 815.

**Exception to Procedural Default**

A petitioner can overcome procedural default by showing either "cause and prejudice" to excuse the default or "that the court's failure to consider the defaulted claim would result in a fundamental miscarriage of justice." *McDowell v. Lemke*, 737 F.3d 476, 483 (7th Cir. 2013). "To demonstrate a fundamental miscarriage of justice, a petitioner must show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent' such that 'it is more likely than not that no reasonable juror would have convicted [the petitioner] in the light of the new evidence.'" *Thomas v. Williams*, 822 F.3d 378, 386 (7th Cir. 2016) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). The petitioner must present "'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial'" in order to make a gateway claim of innocence. *Id.* (quoting *House v. Bell*, 547 U.S. 518, 537 (2006)).

Mr. Barbee argues that he is innocent, but he does not present any new evidence in support of his claim. Rather, he restates evidence from his trial and post-conviction proceedings:

> Without question, Barbee is innocent of the crime of murder as the evidence has proven by way of Anthony Hampton's testimony, that he saw a man on the porch raise a gun, point it at Barbee and pull the trigger, only to have it misfire. This testimony was reinforced by Brandi Arnwine's recantation which validated that Anthony Hampton was telling the truth, a truth that cannot and should not be ignored, and validates that Barbee's killing of Kimbrough, was self-defense as was presented at trial.

Dkt. 20 at 6. Mr. Hampton's testimony was already presented at trial. The Indiana Court of Appeals found Ms. Arnwine's recantation to be lacking in credibility, noting that her "testimony was equivocal and varied, is contradicted by other eyewitness accounts, and her version of events was

8

unsupported by physical evidence." *Barbee I*, 2013 WL 5298468, at *3. Mr. Barbee has failed to make the requisite showing to overcome procedural default.

### B. Claims Denied on the Merits

### Ground Four: Ineffective Assistance of Trial Counsel, Jury Instruction

Mr. Barbee alleges that trial counsel rendered ineffective assistance of counsel for failing to object to an erroneous jury instruction. To succeed on a claim that trial counsel was ineffective, a petitioner must show that counsel's performance was deficient and prejudicial. *Maier v. Smith*, 912 F.3d 1064, 1070 (7th Cir. 2019) (citing *Strickland v. Washington*, 466 U.S. 668, 689−92 (1984)). Deficient performance means that counsel's actions "fell below an objective standard of reasonableness," and prejudice requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. The Indiana Court of Appeals correctly articulated the *Strickland* standard in Mr. Barbee's post-conviction memorandum decision. *Barbee II*, 2018 WL 1514473, at *2.

Mr. Barbee's first alleges that trial counsel was ineffective for failing to object to Jury Instruction 23. The instruction stated:

> The Defendant is charged with Murder. Voluntary Manslaughter, and Reckless Homicide are included in Count I, Murder. *If the State proves the Defendant guilty of Murder, you need not consider the included crimes.* However, if the State fails to prove the Defendant committed Murder, you may consider whether the Defendant committed Voluntary Manslaughter or Reckless Homicide, which the court will define for you. You must not find the Defendant guilty of more than one crime for each count.

DA App. 149[1] (emphasis added).

Final instruction 24 immediately following provided in relevant part:

The crime of murder is defined by law as follows:

---

[1] The Court uses the following citation format throughout this Order: "Tr." – Trial Transcript; "DA App." – Direct Appeal Appendix; "PCR Tr." – Post-Conviction Hearing Transcript.

A person who knowingly or intentionally kills another human being, commits Murder, a felony.

Included in the charge in this case is Voluntary Manslaughter, which is defined by statute as follows:

A person who knowingly or intentionally kills another human being while acting under sudden heat commits Voluntary Manslaughter, a Class B felony. The offense is a Class A felony if it is committed by means of a deadly weapon.

Sudden heat is a mitigating factor that reduces what otherwise would be murder to Voluntary Manslaughter. The State has the burden of proving beyond a reasonable doubt that the Defendant was not acting under sudden heat.

Before you may convict the Defendant, the State must have proved each of the following beyond a reasonable doubt:

1. The Defendant, David Barbee
2. Knowingly
3. Killed
4. Another human being, namely: David Kimbrough, by shooting a deadly weapon, that is: a handgun, at and against the person of David Kimbrough, thereby inflicting mortal injuries upon David Kimbrough, causing David Kimbrough to die
5. And the Defendant was not acting under sudden heat
6. And the Defendant killed by means of a deadly weapon.

If the State failed to prove each of these elements 1 through 4 beyond a reasonable doubt, you must find the Defendant not guilty of Murder as charged in Count I.

If the State did prove each of these elements 1 through 4 and element 6 beyond a reasonable doubt, but the State failed to prove beyond a reasonable doubt element 5, you may find the Defendant guilty of Voluntary Manslaughter, a Class A felony, a lesser included offense of Count I.

If the State did prove each of these elements 1 through 5 beyond a reasonable doubt, you may find the Defendant guilty of Murder, a felony as charged in Count I.

DA App. 150-52. Mr. Barbee's jury was also instructed to consider the instructions as a whole.

DA App. 148.

Mr. Barbee alleges that the sentence, "If the State proves the defendant guilty of Murder, you need not consider the included crimes," in Jury Instruction 23 created a sequencing error that

precluded the jury from considering voluntary manslaughter. This is because under Indiana law, murder and voluntary manslaughter contain the same elements: a knowing or intentional killing of another person. *See* Ind. Code § 35-42-1-1(1) (murder) and Ind. Code § 35-42-1-3 (voluntary manslaughter). Voluntary manslaughter is a lesser included offense of murder, but it is not a "typical" lesser included offense, because instead of requiring the State to prove less than all the elements of murder, it requires the State to prove all of the elements of murder and disprove the existence of sudden heat when there is any appreciable evidence of such in the record. *Watts v. State*, 885 N.E.2d 1228, 1232 (Ind. 2008). Thus, Jury Instruction 23 was problematic because if the jury was told they need not consider the lesser included crimes if they found the State proved the elements of murder, then they might not have continued to evaluate whether the State had disproven the existence of sudden heat. One of Mr. Barbee's trial attorneys acknowledged that this jury instruction was incorrect and that he should have objected to it. PCR Tr. 48–49, 54.

The Indiana Court of Appeals assumed that Mr. Barbee's counsel's performance was deficient but concluded that Mr. Barbee failed to prove he was prejudiced by the mistake. *Barbee II*, 2018 WL 1514473, at *4. The court reasoned that the instructions taken as a whole properly instructed the jury on the difference between voluntary manslaughter and murder. *Id.* at *6. Further, during closing argument, Mr. Barbee's trial counsel explained at length that if the jury found the State proved the elements of murder, they would then have to consider whether the State disproved the existence of sudden heat. *Id.* Finally, the court noted that on direct appeal it had previously decided that the trial court had erred in providing an instruction on voluntary manslaughter because there was no appreciable evidence of sudden heat in the record. *Id.* Accordingly, the court concluded there was no reasonable probability that the result of the trial would have been different. *Id.*

11

This was a reasonable application of *Strickland*. "It is well-established that 'a single instruction to the jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Benefiel v. Davis*, 357 F.3d 655, 662 (7th Cir. 2004) (quoting *Boyd v. United States*, 271 U.S. 104, 107 (1926) and citing *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973)). The court's conclusion that the instructions overall properly informed the jury was reasonable, especially since Jury Instruction 24—which properly explained how the jury was to consider sudden heat—immediately followed the improperly worded instruction. Trial counsel's closing argument further steered the jury in the right direction. Moreover, the court had decided on direct appeal that there was no appreciable evidence of sudden heat in the record. Thus, habeas relief is not warranted on this basis.

**Ground Five: Ineffective Assistance of Counsel, Witness**

Mr. Barbee next argues that trial counsel was ineffective for failing to call James Williams as a witness. Mr. Williams was a friend of Mr. Barbee's who worked for him remodeling houses. PCR Tr. 29-30. Mr. Williams testified at Mr. Barbee's post-conviction hearing that he was across the street working on a home at the time of the murder. *Id.* at 30. He testified that he heard an argument and looked out a window toward the porch. *Id.* at 31. He saw Brandon Tyler reach into his pants as if to pull out a gun. *Id.* He then saw Mr. Barbee reach for his gun, and as he started to back away from the window, he heard a gunshot. *Id.* at 31-32. Mr. Williams did not contact the police, but he did contact Mr. Barbee's attorneys. *Id.* at 32. Mr. Barbee's attorneys subpoenaed him to testify at trial but did not call him. *Id.* at 33. One of Mr. Barbee's trial attorneys testified that Mr. Barbee had named several potential witnesses, and when one did not work out, he would suggest another witness. *Id.* at 45. As trial approached, the attorneys felt uncomfortable calling these witnesses due to the lateness of disclosure. *Id.*

Mr. Barbee alleges that not calling Mr. Williams was deficient performance, and there is a reasonable probability that the outcome of trial would have been different because Mr. Williams' testimony would have supported Mr. Barbee's defense that the shooting was self-defense or reckless homicide. Dkt. 2 at 24. Mr. Barbee alleges that Mr. Williams' testimony bolstered the testimony of Anthony Hampton. Dkt. 20 at 13. Mr. Hampton was a bystander who testified that he saw people at the apartment arguing with Mr. Barbee. Tr. 389. He saw a man that raised a gun, messed with it, and then threw it as if it did not work. Tr. 390-91, 402. He then saw Mr. Barbee raise his gun and fire. Tr. 392, 404, 409.

The Indiana Court of Appeals held that trial counsels' decision not to call Mr. Williams was a reasonable trial strategy, explaining:

> Williams' credibility was problematic at best. Although we assume that being a close friend and employee of Barbee would never alone disqualify a witness in the eyes of trial counsel, here, Williams never reported the incident to the police and was a last-minute witness, proffered by Barbee himself only after counsel was unable to locate other witnesses. Moreover, because neither Caudill nor Baker remembers what Williams' testimony would have been at the time of trial, and because Williams never spoke with the police or left a contemporaneous record of his account, the only evidence of what Williams' testimony would have been is that which he offered at the post-conviction relief hearing.

*Barbee II*, 2018 WL 1514473 at *7.

This was a reasonable application of clearly established federal law. "[A] lawyer's decision to call or not call a witness is a strategic decision generally not subject to review. The Constitution does not oblige counsel to present each and every witness that is suggested to him." *Carter v. Duncan*, 819 F.3d 931, 942 (7th Cir. 2016) (quoting *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997) (internal citation and quotation marks omitted)). "If counsel has investigated witnesses and consciously decided not to call them, the decision is probably strategic." *Id.* (internal citation and quotation marks omitted). Neither of Mr. Barbee's attorneys remembered

13

Mr. Williams. PCR Tr. 8-9, 45. However, Mr. Williams testified that he spoke to the attorneys and attended the trial under subpoena. Therefore, the Indiana Court of Appeals' analysis that they investigated Mr. Williams and strategically decided not to call him was a reasonable application of both the law and the facts. Habeas relief is not warranted on this basis.

**Ground Six: Ineffective Assistance of Appellate Counsel**

Mr. Barbee's final claim is that appellate counsel was ineffective for not challenging Jury Instruction 23 under the fundamental error standard on direct appeal. The general *Strickland* standard governs claims of ineffective assistance of appellate counsel as well as trial counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015). A petitioner who contends that appellate counsel rendered ineffective assistance must show that the failure to raise an issue on direct appeal was objectively unreasonable and that the decision prejudiced petitioner in the sense that there is a reasonable probability that his case would have been remanded for a new trial or that the decision of the state trial court would have been otherwise modified on appeal. *Howard v. Gramley*, 225 F.3d 784, 790 (7th Cir. 2000).

The Indiana Court of Appeals held that Mr. Barbee failed to demonstrate that his appellate counsel was ineffective. It explained that the burden of demonstrating fundamental error under Indiana law is higher than what is required to show a reasonable probability of a different outcome under *Strickland*. *Barbee II*, 2018 WL 1514473 at *9 (citing *Benefield v. State*, 945 N.E.2d 791, 805 (Ind. Ct. App. 2011). Where prejudice under *Strickland* requires a showing of a reasonable probability of a different outcome, the fundamental error exception applies only when the error constitutes a blatant denial of due process principles that makes it impossible to receive a fair trial. *Halliburton v. State*, 1 N.E.3d 670, 678 (Ind. 2013). Thus, because the court had previously found that trial counsel was not ineffective for failing to object to Jury Instruction 23, appellate counsel

14

was not ineffective for failing to challenge the instruction's inclusion as fundamental error, as such a challenge would have been unsuccessful. This was a reasonable application of federal law.

In summary, none of Mr. Barbee's ineffective assistance of counsel claims merit habeas relief because the Indiana Court of Appeals reasonably applied *Strickland*.

### IV. Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.'" 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted).

Further, where a claim is resolved on procedural grounds (such as procedural default), a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claim *and* about whether the procedural ruling was correct. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Mr. Barbee's claims are not cognizable, procedurally

defaulted, or meritless. Jurists of reason would not disagree with this Court's resolution of his claims, and nothing about the claims deserves encouragement to proceed further.

The Court therefore **denies** a certificate of appealability.

## V. Conclusion

Mr. Barbee's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **denied**, and a certificate of appealability shall not issue. Final judgment in accordance with this decision shall issue.

**IT IS SO ORDERED.**

Date: 4/10/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

DAVID BARBEE
985984
INDIANA STATE PRISON
INDIANA STATE PRISON
Electronic Service Participant – Court Only

Andrew A. Kobe
INDIANA ATTORNEY GENERAL
andrew.kobe@atg.in.gov